# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| United States of America ) | CR. No.: 2:18-cr-00425- MBS |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| ) | |
| Ronald P. Hargrave, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I. INTRODUCTION

Ronald P. Hargrave ("Defendant") is the sole individual named in a seven-Count Superseding Indictment filed on October 17, 2018. ECF No. 37. Counts 1, 2, 4, and 7 charged Defendant with knowingly, intentionally, and unlawfully distributing Schedule II controlled substances (oxycodone and dextroamphetamine) in violation of 21 U.S.C. § § 841 (a)(1) and (b)(1)(C). Id. Counts 3, 5, and 6 charged Defendant with knowingly, intentionally, and unlawfully distributing Schedule IV controlled substances (alprazolam and clonazepam) in violation of 21 U.S.C. § § 841 (a)(1) and (b)(1)(E)(2). Id. Defendant entered a plea of not guilty on October 30, 2018 and proceeded to trial. ECF No. 44. On July 18, 2019, after a three-day jury trial, Defendant was convicted on all seven Counts. ECF No. 85.

On September 9, 2019, Defendant filed a motion for a judgment of acquittal or a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. ECF No. 98. Defendant asserts that there was not enough evidence to convict him and the court should therefore overturn the jury's verdicts. Defendant also asserts that he should receive a new trial because allegedly improper character evidence was introduced in violation of Federal Rules of Evidence Rule 404(b) and because the court did not allow one of Defendant's experts to testify pursuant to

1

Federal Rules of Evidence Rule 702. The government filed a response in opposition on September 18, 2019, asserting that the evidence presented at trial was sufficient to convict Defendant and the court did not err in its evidentiary rulings at trial. ECF No. 99. On September 26, 2019, Defendant filed an amendment to his motion. ECF No. 101. In that amendment, Defendant also argues that the government failed to turn over Brady[1] material. The government filed no response to Defendant's amendment.

## II.  LEGAL STANDARD

### A. Rule 29, Judgment of Acquittal

Rule 29 of the Federal Rules of Criminal Procedure states in part that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29 (a). Furthermore, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29 (c)(1). A defendant bringing a Rule 29 challenge based on the sufficiency of the evidence faces a "heavy burden, as appellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." United States v. Clarke, 842 F.3d 288, 297 (4th Cir. 2016); see also United States v. Biedler, 110 F.3d 1064, 1067 (4th Cir. 1997)("A defendant challenging the sufficiency of the evidence. . . bears 'a heavy burden.'")(quoting United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995)). Federal court review of challenges to the sufficiency of evidence presented at trial is "sharply limited." Wilson v. Greene, 155 F.3d 396, 405 (4th Cir.1998) (quoting Wright v. West,

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

505 U.S. 277, 296 (1992)). A jury's verdict must be upheld if there is substantial evidence, viewed in the light most favorable to the government, to support its verdict. Burks v. United States, 437 U.S. 1, 17 (1978). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996). A "substantially supported" verdict may not be overturned because a court "finds the verdict unpalatable or determines that another, reasonable verdict would be preferable." Id. Courts consider "circumstantial as well as direct evidence, and allow[] the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). The court does not consider witness credibility at the Rule 29 stage and "must assume that the jury resolved all contradictions in favor of the government." United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998). The jury is "the sole judge of the credibility of [witnesses]." Biedler, 110 F.3d at 1070.

### B. Rule 33, New Trial

Rule 33 of the Federal Rules of Criminal Procedure states in part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision to grant or deny a Rule 33 motion is left within the discretion of the district court. United States v. Smith, 451 F.3d 209, 216-17 (4th Cir. 2006). "[A] district court should exercise its discretion to grant a new trial 'sparingly' and that the district court should grant a new trial based on the weight of the evidence 'only when the evidence weighs heavily against the verdict.'" United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir.1985). (quoting United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997)).

3

## III. ANALYSIS AND DISCUSSION

### A. Trial Background

At trial, the government had the burden to prove that Defendant provided illegal prescriptions to four individuals: Crystal Kowalski ("Kowalski"), Danielle Williams ("Williams"), Jason Lines ("Lines"), and Mary Flemming ("Flemming"). In order to find Defendant guilty, the government was required to show:

> [f]irst, that the defendant distributed the controlled substance alleged in the indictment; [s]econd, that the defendant knew that the substance distributed was a controlled substance under the law at the time of the distribution; and [t]hird, that the defendant distributed the controlled substances outside the usual course of professional practice and without a legitimate medical purpose.

ECF No. 82 at 9.

The government offered the following witnesses, among others: 1) Jennifer Pyle ("Pyle"), a Doctor's Care employee; 2) Kowalski; 3) Dr. Curtis Franke ("Dr. Franke"), an expert in the general practice of medicine and the prescribing of controlled substances; and 4) Lisa Fisher ("Fisher"), a pharmacist. ECF No. 81-1. Defendant offered: 1) Dr. Jeffrey Siewicki ("Dr. Siewicki"), a pharmacist (proffer only); and 2) Dr. Matthew Wallen ("Dr. Wallen"), an expert in the general practice of medicine and the prescribing of controlled substances.

### B. Counts 1-3

Kowalski testified that Lines is a drug dealer in the Summerville, South Carolina community. 7/16/19 Tr. 17, 11. Kowalski testified that she bought "whatever [drugs] [Lines] had. . . Xanax, heroin cocaine. . . ." 7/16/19 Tr. 17, 15. Kowalski stated that she eventually could not obtain drugs from Lines. 7/16/19 Tr. 21, 22-25. However, Lines put Kowalski in contact with Defendant. 7/16/19 Tr. 22, 4-6. Kowalski stated that she called Defendant "to get prescription medications that [she] wanted." 7/16/19 Tr. 22, 10. Kowalski arranged to meet

Defendant after hours on March 7, 2017 at his place of employment, Doctor's Care in Moncks Corner, South Carolina, in order to exchange "sexual favors" for drugs and money. 7/16/19 Tr. 22, 11-25. According to Kowalski, she arrived at Doctor's Care and she and Defendant had intercourse. 7/16/19 Tr. 25, 10-11; 20-25. Kowalski testified that she later returned to Doctor's Care and received prescriptions for the agreed upon drugs. 7/16/19 Tr. 34, 2-3.

Defendant argues that there was insufficient evidence to support convictions on Counts 1-3. Defendant specifically asserts that there is insufficient evidence to suggest he "realized he was prescribing drugs to either an addict or a drug dealer." ECF No. 98 at 8. Defendant also asserts that Kowalski "presented at Doctor's Care on March 10, 2017, as someone who had extensive and well-documented legitimate medical needs, who had received these medications in the past. . . ." Id. Defendant also submits a notarized statement from Jason Lines which states that Kowalski's account is false. ECF No. 101-1.

A review of the record indicates that when the government asked why Kowalski had sex with Defendant, she stated that it was to receive illegal prescriptions. 7/16/19 Tr. 34, 20-22. Kowalski further testified that she did not complain of a sore throat or any other ailment on her March 10, 2017 return trip to see Defendant at Doctor's Care. 7/16/19 Tr. 35, 5-15; see also 7/16/19 Tr. 35, 1-10; see also 7/16/19 Tr. 38, 21-25. Kowalski stated that the sole reason she presented at Doctor's Care on March 10, 2017 was to "get [the] prescriptions [Defendant] owed [her]." 7/19/19 Tr. 35, 20. Kowalski's direct examination concluded with the following exchange:

> Q: Okay. And again, what was the—the trade-off that you made with [Defendant] was what? What was the March 7th to March 10th trade off?
>
> A: Sex for money and drugs.

7/16/19 Tr. 41, 2-5.

5

Kowalski testified that she had no legitimate medical need for the prescriptions Defendant issued, and Defendant was aware of that fact. The jury evaluated Kowalski's testimony and found it to be credible. Further, Dr. Franke examined Kowalski's medical records and determined that Kowalski had no legitimate medical need for the prescriptions that Defendant issued and Defendant issued the prescriptions outside the ordinary course of medical practice. Tr. 7/16/19 164, 3-5; Tr. 7/16/19 166, 18-19; 7/16/19 Tr. 167,7-8.  Finally, in regards to Lines' statement, the court notes that it was not introduced into evidence at trial and therefore was not considered by the jury.  In any event, the court cannot evaluate witness credibility at this stage.

The court finds that the jury's verdicts as to Counts 1-3 are substantially supported by the evidence in the record, viewed in the light most favorable to the government.

### B. Counts 4-7

The government offered evidence through prescription records to prove that Defendant distributed controlled substances outside the usual course of professional practice and without a legitimate medical purpose to Lines and Williams. In addition, Kowalski identified Williams as someone in the "circle of drug people." 7/16/19 Tr. 18, 8-9. The records reviewed by Dr. Franke showed that on February 20, 2017, Williams presented at the Doctor's care in Moncks Corner, South Carolina with tooth pain and Defendant prescribed oxycodone 10 mg. 7/16/19 Tr. 169, 19-20; 7/16/19 Tr. 175, 8-9. Lines also presented at the Doctor's Care in Moncks Corner, South Carolina, on February 20, 2017 with purported urological issues and Defendant prescribed Xanax and oxycodone. 7/16/19 Tr. 177, 10-18; 7/16/19 Tr. 179, 6-9.

The government further offered evidence to prove that Defendant provided prescriptions outside the usual course of professional practice and without a legitimate medical purpose to Flemming. Fisher testified that Flemming presented at the Walgreen's pharmacy on Devine

Street in Columbia, South Carolina, in May 2015 with a prescription not issued by a physician from the Columbia area. 7/16/19 Tr. 129, 15. Fisher questioned the prescription and paged Defendant, who was listed as the doctor on the prescription. 7/16/19 Tr. 129, 21-24. Defendant responded to the page and called Fisher back, but the phone number on the caller ID did not match Defendant's number, and the caller ID did not show Defendant's name. 7/16/19 Tr. 130, 13-17. Fisher refused to fill the prescription. 7/16/19 Tr. 132, 1-3. Defendant then arrived at the pharmacy with Flemming in order to get Fisher to fill the prescription in dispute. 7/16/19, Tr. 132, 9. Fisher testified that Defendant and Flemming were "all over" each other, "like they were dating or something." 7/16/19, Tr. 133, 7-9. Fisher ultimately did not fill the prescription. 7/16/19 Tr. 135, 21.

Defendant asserts that there is insufficient evidence to support convictions on Counts 4-7. Defendant specifically indicates that, as to Williams and Lines, "[t]hese two patients came into Doctor's Care complaining of various long-term ailments that they had both been treated for before." ECF No. 98 at 12. Defendant elaborates that "[a]t most, the government proved that [Defendant]'s notes did not appear--to Dr. Franke--to support the prescriptions issued to Williams and Lines, but this is not sufficient evidence to support a criminal conviction." Id. Defendant noted that his expert witness, Dr. Wallen, "testified that in his expert opinion, there were legitimate medical purposes for the prescriptions issued to Danielle Williams and Jason Lines." Id. As to Flemming, Defendant states that "at most the government's proof shows that, in Dr. Franke's opinion, Dr. Hargrave's notes do not support the prescriptions issued to Flemming." Id. at 13. Defendant again states that his "expert witness, Dr. [] Wallen, testified that there were legitimate medical purposes for the prescription issued to Mary Flemming." Id. at 14.

Dr. Franke testified that, based on the medical records of Williams and Lines and their purported illnesses of a toothache by Williams and urological problems by Lines, there was no legitimate medical purpose for the prescriptions Defendant wrote. Dr. Franke also testified that in his expert opinion, Defendant did not write the prescriptions within the ordinary course of medical practice. 7/16/19 Tr. 174 , 11-14;  7/16/19 Tr. 175,14; 7/16/19 Tr. 175, 17-18; 7/16/19 Tr. 181, 11; 7/16/19 Tr. 182, 22. Dr. Franke examined Mary Flemming's extensive medical records, in which she repeatedly presented to Defendant and complained of anxiety and back pain. 7/16/19 Tr. 189, 5.  In reviewing Flemming's numerous records, Dr. Franke concluded  he was concerned that Defendant was "feeding an addiction" with his prescriptions and that Defendant was prescribing Flemming "massive quantities" of medication. 7/16/19 Tr. 197,  5-8, 14. Dr. Franke concluded that in his expert opinion, there was no legitimate medical purpose for the prescriptions Defendant wrote for Flemming that formed the basis of the Indictment, and those prescriptions were not written within the ordinary course of medical practice. 7/16/19 Tr. 205,  25; 7/16/19 Tr. 206, 5-7.  Although Dr. Wallen, Defendant's expert, reached the opposite conclusion, the jury heard both experts' testimony and found Dr. Franke's account to be more credible. The jury also considered the testimony of Fisher [2], who opined that Defendant's visit to her pharmacy was highly unusual. 7/16/19 Tr. 93, 5-11.  The court finds that the jury's verdicts as to Counts 4-7 are substantially supported by the evidence in the record, viewed in the light most favorable to the government.

---

[2] Dr. Franke also indicated that Fisher's account was accurate, stating that it was inappropriate for a treating physician to accompany a patient to the pharmacy. 7/16/19 Tr. 195 at 16-20.

### C. Rule 404 (b) Testimony

Rule 404(b) of the Federal Rules of Evidence provides " [e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is only admissible if it is relevant to an issue unrelated to character, necessary, and reliable. United States v. Sterling, 860 F.3d 233, 246-48 (4th Cir. 2017).

At trial, Pyle testified about footage from a Doctor's Care surveillance camera from the night of March 7, 2017. 7/15/19 Tr. 163, 15. Pyle stated that she recognized Kowalski. 7/15/19 Tr. 165, 5-9. The government asked Pyle "how [did she] recognize [Kowalski]," to which Pyle responded that she recognized "her from different times of seeing her in the parking lot, seeing her come ask for [Defendant,] random times in and out of the office." 7/15/19 Tr. 165, 10-13. Counsel for Defendant then moved for a mistrial at a sidebar, suggesting that the government "elicited testimony to suggest that [Kowalski] had been [to Doctor's Care] often. . . ." 7/15/19 Tr. 167, 1-7. In response, the Assistant United States Attorney stated that the question of whether Pyle had seen Kowalski before was to determine only if Pyle had seen Kowalski before testifying in court. 7/15/19 Tr. 169, 2-4. The Assistant United States Attorney elaborated that he was simply trying to establish that Kowalski, the individual set to testify later, was the "woman [Pyle] saw that night." 7/15/19 Tr. 171, 4-6. The court declined to declare a mistrial and suggested that any potential prejudice would be cured with cross examination. Counsel for Defendant declined to do so, stating that would "inv[ite] more speculation and more improper character fixation by the jurors." 7/15/19 Tr. 172, 18-20. Counsel for Defendant also did not request for Pyle's comment to be stricken.

Defendant argues that he was prejudiced by the testimony of Pyle and should therefore receive a new trial as a result of that prejudice. Pyle testified that she had seen Kowalski at Doctor's Care on numerous occasions when this was not the case. ECF No. 98 at 22. Defendant claims that the government "introduced unduly prejudicial character evidence into this trial" and attempted to introduce improper Rule 404(b) evidence. Id. at 23. Defendant surmises that because Pyle claimed to have seen Kowalski on multiple occasions, the "jurors surely would have been left with the impression that [Defendant]'s case resembled other, pill-mill type cases . . . " and Defendant would accordingly be prejudiced. Id. at 24.

The Assistant United States Attorney's stated at the sidebar that the government was merely seeking to place Kowalski at the scene of the incident on the night of March 7, 2017. Pyle volunteered information that may or may not have been correct; the government had no way of knowing what Pyle would say when queried. Rule 404(b) is not implicated because no evidence was introduced to prove Defendant's character. The interests of justice do not require a new trial on this ground.

### D. Exclusion of Expert Testimony

Rule 702 of the Federal Rules of Evidence states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Federal district courts perform "an important gatekeeping function in deciding whether to admit expert testimony under Federal Rule of Evidence 702." United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). When addressing scientific or technical evidence, a district court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). District courts have "broad discretion" in determining "whether to admit expert testimony. . . ." United States v. Barsanti, 943 F.2d 428, 432 (4th Cir, 1991).

At trial, the Assistant United States Attorney objected to Dr. Siewicki testifying. The Assistant United States Attorney argued that Dr. Siewicki is not a medical doctor and can only fill prescriptions and not issue them, thus making it difficult for a pharmacist to determine if a patient had a legitimate medical need for a prescription in dispute. 7/17/19 Tr. 37, 10-21. More specifically, the Assistant United States Attorney asserted that a pharmacist "has no part in the diagnosis." 7/17/19 Tr. 37, 25. The court questioned counsel for Defendant as to whether the witness could assert an opinion as to "whether or not in [the situations in this case, the] prescription was appropriate and evidence of a legitimate medical need at the time it was prescribed based on the patient's symptoms and the diagnosis of the doctor." Tr. 7/17/19 39, 18-24. Counsel for Defendant asserted that Dr. Siewicki could not testify as to Defendant's "reasoning" in prescribing what he prescribed, but he could testify as to how frequently certain drugs are prescribed, and thus reach a conclusion as to whether a prescription was issued for a legitimate medical need. 7/17/19 Tr. 39, 25-Tr. 40, 1; 7/17/19 Tr. 42, 4-7; 7/17/19 Tr. 43, 1; 7/19/19 Tr. 43, 20-24. After allowing Dr. Siewicki to proffer his testimony and questioning him about his qualifications and his responsibilities as a pharmacist, the court concluded:

> I don't know that a pharmacist, a Doctor of Pharmacy can testify to that. I think he can testify as to whether certain controlled substance are effective for certain conditions, how they react on the body, but he can't say what -- whether what [Defendant] did was appropriate, because he cannot diagnose patients. And he's never done that before. So, I mean, he can testify as a pharmacist, a Doctor of Pharmacy. He can testify about certain drugs and what they do and what pharmacists do when they get prescriptions, but that's not an issue in this case, and I think that it would just be confusing the jury to add that when no one has ever questioned what a pharmacist did.

7/17/19 Tr. 73, 21-25; 7/17/19 Tr. 74, 1-8.

In summary, the court ultimately found Dr. Siewicki's testimony to be irrelevant to the case and precluded him from testifying. 7/17/19 Tr. 74, 10-17.

Defendant argues that the court erred by not allowing Dr. Siewicki to testify, and that he should receive a new trial because of this error. ECF No. 98 at 25. Defendant asserts that Dr. Siewicki's testimony would have been relevant, as he was qualified to speak to the issue of "whether [Defendant] prescribed [the] medications for legitimate medical needs" and he would have "rebutted Dr. Franke's testimony. . . ." Id. at 26-27.

The central issue of the case was whether Defendant prescribed drugs for a legitimate purpose. Dr. Siewicki, as a pharmacist, could not testify as to whether the prescriptions Defendant issued were for a legitimate medical purpose and within the ordinary course of practice, as he cannot diagnose patients or practice medicine. Therefore, his testimony would not help the trier of fact to understand the evidence or to determine a fact at issue. The court declines to grant a new trial on this ground.

### E. Brady Material

In Brady v. Maryland, the Supreme Court held that the prosecution must turn over any evidence to the defense that may exonerate the defendant. 373 U.S. 83 (1963). Favorable

impeachment evidence is required Brady material. United States v. Parker, 790 F.3d 550, 558 (4th Cir. 2015). Evidence of an ongoing investigation may show witness bias if that witness is cooperating with the government. Id.

Defendant argues that he has "reason to believe that there is an on-going federal criminal investigation into Lines, Crystal Kowalski, and others which was on-going at the time of [Defendant's] trial." ECF No. 101 at 1-2. Defendant asserts that this information would have constituted impeachment evidence against Kowalski. Id. The court is not persuaded. Defendant has not provided the court with any evidence of an ongoing investigation beyond speculation. Furthermore, at trial, the government presented the proffer agreement it entered into with Kowalski. 7/16/19 Tr. 8, 22. The agreement obligated Kowalski to tell the truth, and in exchange, the government would not prosecute Kowalski for her past illegal activities. 7/16/19 Tr. 9, 9-11, 15-24. The jury was aware that Kowalski was not being prosecuted in exchange for her truthful testimony. The interests of justice do not support a new trial on this ground.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment of acquittal or a motion for a new trial, ECF No. 98, is **DENIED**.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Charleston, South Carolina

January 8, 2020